UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL LO,                                              CIVIL NO. 07-4602 (JRT/JSM)

      Petitioner,

v.                                                       <u>REPORT AND RECOMMENDATION</u>

COMMISSIONER OF
CORRECTIONS OF THE
STATE OF MINNESOTA,

      Respondent.

      JANIE S. MAYERON, U.S. Magistrate Judge

      This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1]. Respondent has filed an Answer to Petition for Habeas Corpus Relief by State Prisoner [Docket No. 6]. This matter was decided on the submissions of the parties.

      This matter has been referred to this Court for a Report and Recommendation pursuant 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1(c).

      The Petitioner appears by Stephen V. Grigsby, Esq.; Respondent appears by Mark Nathan Lystig, Esq., of the Ramsey County Attorney's Office.

      For the reasons discussed below, it is recommended that Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] be denied and dismissed with prejudice.

## I.    BACKGROUND

      The facts bearing on this habeas case, as described in <u>State v. Lo</u>, 2006 WL 2598008 (Minn.Ct.App. Sept. 12, 2006), are as follows: in March of 2004, Petitioner was charged with aiding and abetting second-degree murder after he and friends allegedly

stabbed a victim more than 20 times in a convenience store parking lot.  Petitioner pleaded not guilty, and proceeded to trial.  At trial, a dispute arose over the scope of cross-examination of Petitioner's co-defendant and his plea agreement with the State. Via a motion in limine, Petitioner requested that he be able to cross-examine the co-defendant as to the terms of the co-defendant's plea agreement, including the co-defendant's understanding of the 40-year statutory maximum penalty he was facing prior to the plea bargain, and how his sentence differed from the maximum penalty. Attachment to Answer to Petition, Ex. 6 (Trial Transcript), pp. 561-62, 572-73 [Docket No. 6].  The State objected on three grounds: one, that it would be improper to use the statutory maximum, as any discussions the State had with the co-defendant regarding the sentence he would receive in return for a plea were in relation to the sentencing guidelines and not the maximum; two, it would be both remote and speculative to assume that the co-defendant would have received the statutory maximum if there was no plea; and three, based on the Minnesota Supreme Court cases State v. Greenleaf, 591 N.W.2d 488 (Minn. 1999) and State v. DeVerney, 592 N.W.2d 837, 845 (Minn. 1999), it would be improper to allow questioning regarding what the co-defendant thought he was going to get under the agreement and what he could have received if he had not entered into the agreement.  Attachment to Answer to Petition, Ex. 6 (Trial Transcript), pp. 562-63, 573.  Relying on three factors – Greenleaf, where the cross-examination regarding the plea agreement as to sentencing was confined to the percentage of reduction the co-defendant received in exchange for his plea; that jurors were not permitted to know the sentence that the defendant could face if convicted; and that it would be speculative to apply the percentage reduction against the maximum

sentence the co-defendant could have received if he had not entered into the plea agreement – the trial court ruled that Petitioner could not cross-examine the co-defendant on the maximum or guideline sentence he would face if he did not enter into the plea agreement.  Id., pp. 564, 568, 573-74.   The trial court determined that Petitioner could cross-examine the co-defendant on the percentage reduction he had been promised off the guideline sentence.  Id., pp. 573-74; see also Attachment to Answer to Petition, Ex. 7 (Trial Transcript), pp. 724-25, 892, 904.

Consistent with this ruling, the trial court permitted examination of the co-defendant regarding the original charged offense of murder, the reduced charge of aiding and abetting to which he plead guilty, the percentage of reduction off the guidelines sentence he was facing under the original charge (78%), that he could be deported, that he would not be sentenced until he had testified truthfully for the prosecution, and that he would have faced a substantially longer prison sentence without the plea bargain.  Attachment to Answer to Petition, Ex. 7 (Trial Transcript), pp. 812-13, 869-70, 891-893; Lo, 2006 WL 2598008 at *3.

The jury found Petitioner guilty of aiding and abetting second-degree murder in violation of Minn.Stat. §§ 609.19 and 609.05.

Following his trial and conviction, Petitioner appealed to the Minnesota Court of Appeals, arguing, among other issues,[1] that the district court abused its discretion by limiting the cross-examination of the testifying co-defendant.  Petitioner contended that

---

[1]    Petitioner also argued on appeal that the district court abused its discretion by excluding testimony regarding Petitioner's remorse over the victim's death, excusing a jury panel member during voir dire, and denying a hearing for jury misconduct, pursuant to Schwartz v. Minneapolis Suburban Bus Co., 104 N.W.2d 301, 303 (Minn. 1960). See Lo, 2006 WL 2598008 at *1.

"the district court abused its discretion by precluding him from cross-examining a co-defendant about the exact number of months the co-defendant's sentence would be reduced as a result of the plea bargain and the fact that the co-defendant would not be sentenced until after testifying against appellant, arguing that these limitations violated his rights under the Confrontation Clause." Id. at *2 (footnotes omitted).

Based on its finding that the "minimal limitation placed on [Petitioner's] cross-examination of his co-defendant did not prevent the jury from being exposed to any possible bias or motive to fabricate and was consistent with controlling precedent," the Court of Appeals determined that "the district court did not abuse its discretion in excluding questions regarding the exact number of months the co-defendant's sentence would be reduced," and affirmed Petitioner's conviction. Lo, 2006 WL 2598008 at *1, 4.

The appellate court reached this conclusion based on the following reasoning:

"Based on concerns about such things as harassment, decision making on an improper basis, confusion of the issues, and cross-examination that is repetitive or only marginally relevant, the [district] court possesses wide latitude to impose reasonable limits on cross-examination of a prosecution witness." State v. Tran, 712 N.W.2d 540, 550 (Minn. 2006) (quotation omitted). The district court's discretion to control the scope of cross-examination is limited by the Confrontation Clause of the Sixth Amendment, which guarantees a criminal defendant the right to confront and cross-examine witnesses. Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110 (1974); Tran, 712 N.W.2d at 550-51. But "[t]he Confrontation Clause guarantees only 'an opportunity for cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" State v. DeVerney, 592 N.W.2d 837, 845 (Minn. 1999) (quoting Kentucky v. Stincer, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664 (1987)).

In criminal cases, the Confrontation Clause contemplates a cross-examination in which the defendant has the opportunity to reveal "a prototypical form of bias" on the part of the witness. State v. Lanz-Terry, 535 N.W.2d 635, 640 (Minn. 1995). When a defendant's attempted cross-examination aimed at showing bias has been restricted, the issue to be determined is whether "the jury has sufficient other information to make a

discriminating appraisal of the witness's bias or motive to fabricate." Id. at 641 (quotation omitted). For example, in DeVerney, 592 N.W.2d at 845 and State v. Greenleaf, 591 N.W.2d 488, 502 (Minn. 2002), the Minnesota Supreme Court held that it was not a violation of a defendant's Sixth Amendment rights for the district court to allow the defendant to closely question a co-defendant witness regarding how the co-defendant's sentence would be reduced in exchange for his testimony, while forbidding the defendants from inquiring about the precise number of months by which the sentence would be reduced.

Here, appellant was permitted to cross-examine his co-defendant about the co-defendant's original charge of second-degree murder, the reduced charge of aiding and abetting to which the co-defendant pleaded guilty, and the percentage of reduction of the co-defendant's sentence under the plea bargain. Appellant's cross-examination of the co-defendant also elicited that only prosecutors are able to offer lesser sentences for testimony, that the co-defendant would not receive the lesser sentence until after he testified on behalf of respondent, and that the co-defendant's only opportunity to testify was in appellant's trial because the other co-defendants had pleaded guilty. This cross-examination provided sufficient information to allow the jury to examine the co-defendant's potential bias or motive to fabricate and is consistent with the limitations deemed proper under DeVerney and Greenleaf.

Id. at *3.

In rejecting Petitioner's contention that the DeVerney and Greenleaf were not controlling, and that the court should instead have followed the Eighth Circuit's decision in United States v. Roan Eagle, 867 F.2d 436 (8th Cir. 1989), the Minnesota Court of Appeals determined that these Minnesota Supreme Court cases, which were decided after Roan Eagle, were binding on it, and in any event, it was not apparent that Roan Eagle conflicted with DeVerney and Greenleaf.  The appellate court stated:

In Roan Eagle, the appellant was barred from inquiring into the specific lesser charge to which her co-defendant pleaded and the sentence that she might receive, and was permitted to cross-examine the co-defendant only as to the original charge in the indictment, the fact that the co-defendant cooperated with the prosecution, and the fact that the co-defendant was allowed to plead guilty to a lesser charge. 867 F.2d at 440. In dictum, the Eighth Circuit found that these limitations constituted error, concluding that effective cross-examination "includes not only the specific

crime to which the co-actor is pleading guilty, but the range of punishment to which the one pleading guilty is exposed to in contrast to what that person knows-or ought to know-is the potential sentence for a conviction following a plea of not guilty." Id. at 443.

In accord with Roan Eagle, DeVerney and Greenleaf do not limit a defendant's right to cross-examine only regarding the specific charges to which a co-defendant is pleading guilty, and the decisions allow for a "range of punishment" to be elicited through inquiries about the percentage of reduction of the sentence as a result of the plea agreement, and only prohibit inquiries about the precise number of months the sentence could be reduced. See DeVerney, 591 N.W.2d at 845 (noting that district court, while prohibiting defendant from inquiring as to the exact number of months the co-defendant's sentence could be reduced, did not prohibit defendant from cross-examining co-defendant about "every other aspect of the plea agreement, including the percentages by which [co-defendant's] sentenced could be reduced"); see also Greenleaf, 591 N.W.2d at 488 (prohibition only cross-examination about exact number of months co-defendant's sentence could be reduced). Consequently, Roan Eagle and the Minnesota decisions do not reach contradictory conclusions.

Id. at *3-4.

Petitioner sought review of the Court of Appeals' decision, which was denied by the Minnesota Supreme Court on November 22, 2006.

On November 14, 2007, Petitioner filed his Petition for Habeas Corpus Relief in this Court.  Petitioner's sole ground for relief was that his rights under the Confrontation Clause of the Sixth Amendment were violated during his trial when the court did not permit cross-examination of the testifying co-defendant as to the precise amount of time the co-defendant saved by cooperating with the State and entering into a plea agreement for a lesser crime.

## II.     DISCUSSION

### A.     <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner did not explicitly state whether he was proceeding under 28 U.S.C. § 2254(d)(1) or (2).  Nevertheless, it is evident from the substance of his Petition and supporting memoranda that he is raising a challenge under § 2254(d)(1).  That is, the facts are not in dispute; rather it is Petitioner's contention that the state court's evidentiary ruling regarding the scope of his co-defendant's cross-examination was contrary to or amounted to an unreasonable application of federal law.

The Eighth Circuit has described the review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. <u>Williams v. Taylor</u>, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407.

A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411.

<u>Engesser v. Dooley</u>, 457 F.3d 731, 735-36 (8th Cir. 2006).  Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances."  <u>May v. Iowa</u>, 251 F.3d 713, 716 (8th Cir. 2001) (<u>citing</u> <u>Williams</u>, 529 U.S. at 409-13).

By its terms, it is important to remember that § 2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision to 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>O'Brien v. Dubois</u>, 145 F.3d 16, 20 (1st Cir. 1999) (overruled on other grounds).  Thus, even if lower federal court decisions support Petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence."  <u>Id.</u>  Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the

disputed issue."  Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25) ("If no Supreme Court precedent is dispositive of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.' In such circumstances, a federal habeas court then determines whether the state court decision reflects an unreasonable application of clearly established Supreme Court jurisprudence.  This reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable. To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue.").

With these standards of review in mind, this Court now turns to the Petition.

**B.    Analysis**

Petitioner claims that the Minnesota Supreme Court cases Greenleaf and DeVerney, both of which were relied upon by the Minnesota Court of Appeals in its decision upholding Petitioner's conviction, are in conflict with the Eighth Circuit's decision in Roan Eagle.  Petition, p. 8.  Specifically, Petitioner notes that in Roan Eagle the Eighth Circuit reversed the trial judge's limitation of cross-examination, finding that the Confrontation Clause requires allowing cross-examination to question "not only the specific crime to which the co-actor plead guilty, but the range of punishment to which the one pleading guilty is exposed in contrast to what that person knows—or ought to know—is the potential sentence for a conviction following a plea of guilty."  Id. (citing Roan Eagle, 867 F.2d at 443).   As such, Petitioner argues that the decision was contrary to clearly established federal law.  Id.

Additionally, Petitioner argues that the Minnesota Court of Appeal's reliance on Greenleaf and DeVerney in his case was improper because the State, rather than Petitioner, opened the door to the actual amount of time in prison saved by the co-defendant's guilty plea.  Petition, p. 9.  According to Petitioner, when he attempted to place the plea bargain in its proper perspective, the trial court still refused to admit that information.  Id., p. 10.  Petitioner claims that this amounted to the trial court allowing a false impression of the effect of the plea bargain, and thus giving a false picture of the witness and his motives.  Id., pp. 11-12.

In opposition, Respondent asserted that Petitioner cannot show that he was denied a reasonable opportunity for cross-examination under the Confrontation Clause, and that Minnesota state law is not in conflict with federal law.  Answer to Petition, p. 8. Respondent contends that in Roan Eagle, the Eighth Circuit held that the trial court's limitations on the scope of cross-examination of a co-defendant constituted harmless error, and also that the language cited by Petitioner from Roan Eagle regarding what the cross-examination should have allowed (867 F.2d at 443), was only dicta.  Id., p. 6. Respondent further claims that the evidence allowed on cross-examination of the co-defendant in the instant case was adequate to satisfy the requirements of the Confrontation Clause, albeit not in the specific form desired by Petitioner.  Id., p. 7.

The Court initially observes that the United States Supreme Court has not directly spoken on the issue of whether a trial court's refusal to allow cross-examination as to the exact sentence a co-defendant was promised pursuant to a plea agreement violates a defendant's rights under the Confrontation Clause.  Consequently, this Court

is left to determine whether "the state court decision reflects an unreasonable application of clearly established Supreme Court jurisprudence." Atley, 191 F.3d at 872.

The starting place for this Court's analysis is the United States Supreme Court's articulation regarding the purpose and bounds of the Sixth Amendment in the context of a cross-examination of a trial witness.

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), "means more than being allowed to confront the witness physically." Davis v. Alaska, 415 U.S., at 315, 94 S.Ct., at 1110. Indeed, " '[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" Id., at 315-316, 94 S.Ct., at 1110 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original). Of particular relevance here, "[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Davis, supra, at 316-317, 94 S.Ct., at 1110 (citing Greene v. McElroy, 360 U.S. 474, 496 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) ( per curiam ) (emphasis in original).

Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986).

Van Arsdall dealt with a trial judge's denial of any cross-examination regarding an agreement to dismiss the criminal charges between the prosecutor and the testifying witness. Id. at 676. In finding that the prohibition of all inquiry into the witness's bias

violated Van Arsdall's rights under the Confrontation Clause, the Supreme Court determined that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors…could appropriately draw inferences relating to the reliability of the witness.'" Id. at 680 (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)).  Van Arsdall did not address the situation presented by the instant case – where some, but not all cross-examination sought by Petitioner, was permitted.   Nevertheless, relying on the very same language the Supreme Court articulated in Van Arsdall, the Minnesota Court of Appeals stated that the Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish," and that the trial court has wide latitude to impose reasonable limits on cross-examination to address a variety of concerns. Compare Lo, 2006 WL 2598008 at *3 with Van Arsdall, 475 U.S. at 679.  If anything, the reasoning of Van Arsdall suggests that the decision of the Minnesota Court of Appeals to uphold the trial court's limitations on Petitioner's cross-examination of his co-defendant was not at odds with the law as articulated by the Supreme Court.

Furthermore, this Court rejects Petitioner's suggestion that Roan Eagle requires a court to provide a criminal defendant an opportunity to elicit from a co-defendant the actual number of months of the sentence a co-defendant would have received if he had not entered into the plea agreement.  First, there is no language in that decision that stands for that proposition.  Second, unlike the instant case, in Roan Eagle the trial judge had not allowed the defendant to establish through cross-examination anything

beyond the facts that the co-defendant had originally faced a charge of first degree murder, and that the co-defendant had entered a plea to a lesser charge in exchange for her cooperation.  867 F.2d at 443.  Based on these facts, the Eighth Circuit declared that "[t]he details of a plea can be highly relevant to a jury in assessing the credibility of a guilty-pleading co-defendant who has taken the stand to testify for the prosecution," and '[t]o constitute effective cross-examination, an advocate's inquiry into the terms of the agreement is essential."  Id. at 443-44.  In contrast, Petitioner was not only able to elicit the specific crime to which his co-defendant had been charged and the specific crime to which his co-defendant plead guilty, through direct and cross-examination of the co-defendant, the jury was made aware that the co-defendant had originally been charged with the same crime, second-degree murder, as Petitioner; the co-defendant had plead guilty to a different crime, aiding and abetting, in cooperation with the prosecutor; as a result of such cooperation, the co-defendant was to receive a 78% reduction from the length of the sentence he likely would have received if he had not entered into the plea bargain; and the co-defendant would not receive the lesser sentence until after he testified on behalf of the state.  Attachment to Answer to Petition, Ex. 7, Trial Transcript, pp. 812-13, 869-70, 891-893; Lo, 2006 WL 2598008 at *3.  Roan Eagle did not require the disclosure of the specific sentence the co-defendant bargained for; it required sufficient details of the plea to be presented to permit the jury to evaluate the credibility and bias of the testifying co-defendant.  The cross-examination elicited by Petitioner of his co-defendant met these standards.

Here, faced with the proscription against permitting the jury to learn the sentence Petitioner was potentially facing if convicted, and the right of Petitioner to confront his

co-defendant and explore possible grounds for bias, the trial court properly denied

Petitioner's right to cross-examine the co-defendant regarding the specific number of

months he was facing in prison if he did not enter into the plea agreement.   Minnesota

law, consistent with federal law, prohibits a jury from considering the consequences of

its verdict.   For example, in <u>Shannon v. United States</u>, the Supreme Court held:

> It is well established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." <u>Rogers v. United States</u>, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975).   The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion. <u>See</u> <u>Pope v. United States</u>, 298 F.2d 507, 508 (5th Cir. 1962); cf. <u>Rogers</u>, <u>supra</u>, 422 U.S., at 40, 95 S.Ct., at 2095.

512 U.S. 573, 579 (1994).   Similarly, in <u>State v. Chambers</u>, the Minnesota

Supreme Court stated:

> It has long been the rule in Minnesota that sentencing is not a proper consideration for the jury.  <u>See</u> <u>State v. Gensmer</u>, 235 Minn. 72, 80-81, 51 N.W.2d 680, 685 (1951); <u>State v. Finley</u>, 214 Minn. 228, 231-32, 8 N.W.2d 217, 218 (1943) ("The jury go outside their province as triers of the facts if they include the matter of punishment in their deliberation."). Sentencing is an exercise of the court rather than the jury, and "[i]t is proper in a criminal case to admonish the jury that the punishment is a subject with which they have nothing to do." <u>Gensmer</u>, 235 Minn. at 79, 51 N.W.2d at 685. The jury's role is to determine whether the state has met its burden of proving the elements of the crimes charged beyond a reasonable doubt.

589 N.W.2d 466, 474 (Minn. 1999).

In rejecting Petitioner's motion in limine for permission to question the co-defendant as to the specific number of months he faced in prison if he was convicted of the original charge of murder, the trial court correctly observed that "the jury will know that those are the maximum and the guideline sentences that would probably apply to your client.  And jurors are not supposed to know what the sentence is going to be." Attachment to Answer to Petition, Ex. 6 (Trial Transcript) p. 568.  It was exactly for this reason that the Minnesota Supreme Court in <u>Greenleaf</u> affirmed the trial court's denial of Greenleaf's cross-examination of his co-defendant regarding the specific months his sentence would be reduced pursuant to the plea agreement.  591 N.W.2d at 502 ("The trial court was properly concerned that a recitation of the number of months of confinement [a co-defendant] could serve might mislead the jury regarding the number of months another defendant, if convicted, might be confined. It is for the court to sentence, and not the jury, and thus the court, by allowing the jury to only know the percentages of the plea agreement, properly prevented the jury from speculating about possible sentences.").   The trial court's decision to prohibit questioning about the specific number of months Petitioner's co-defendant was looking at if he was convicted of the original charge of murder constitutes a reasonable limitation on the cross-examination of the co-defendant.  <u>See</u> <u>State v. Tran</u>, 712 N.W.2d 540, 550 (Minn. 2006) (quotation omitted) (citing concerns about "decision making on an improper basis" as grounds for limiting cross-examination); <u>Van Arsdall</u>, 475 U.S. at 679 (citing concerns of "prejudice [and] confusion of the issues" as proper grounds for imposing reasonable limits on cross-examination).

In conclusion, like the United States Supreme Court, the Minnesota Court of Appeals recognized that it is the right of opportunity for cross-examination, and not unfettered cross-examination, that is guaranteed by the Sixth Amendment.  See Van Arsdall, 475 U.S. at 679 ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant"; "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (quotation omitted) (emphasis in original)); Lo, 2006 WL 2598008 at *3 ("Based on concerns about such things as harassment, decision making on an improper basis, confusion of the issues, and cross-examination that is repetitive or only marginally relevant, the [district] court possesses wide latitude to impose reasonable limits on cross-examination of a prosecution witness." (quotation omitted); "But '[t]he Confrontation Clause guarantees only 'an opportunity for cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' (quotation omitted)).   The trial court's decision to strike a balance between Petitioner's constitutional right to confront his co-defendant and an unprejudiced and objective jury, by permitting cross-examination about most, but not all, of the details of the plea bargain struck by Petitioner's co-defendant, was neither contrary to nor an unreasonable application of federal law.

**III.    RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be DENIED and this action be DISMISSED WITH PREJUDICE.

Dated:  December 8, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before December 29, 2008 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.